TODD M. FRIEDMAN (SBN 216752)
tfriedman@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Road, Suite 105
Calabasas, CA 91302
Telephone: (323) 306-4234

ILAN LAVIAN (SBN 354592)
ilan@lavianpc.com
**LAVIAN, P.C.**
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036

*Attorneys for Plaintiff Dhamir Hasan, individually and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

DHAMIR HASAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

QUICK CAPITAL FUNDING LLC, a California limited liability company; and DOES 1 through 10, inclusive,

Defendants.

Case No. ___________________

**CLASS ACTION COMPLAINT FOR:**

**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**

**(2) VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT. § 501.059**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Dhamir Hasan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Defendant Quick Capital Funding LLC ("Quick Capital Funding") and Does 1 through 10, inclusive (collectively, "Defendants"), and alleges as follows upon personal knowledge as to his own acts and experiences, and upon information and belief, including the investigation of counsel, as to all other matters.

## NATURE OF THE ACTION

1. This Court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as further alleged in the Jurisdiction and Venue section below.

2. This is a putative class action under the TCPA and its implementing regulations, and under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 (the "FTSA"), arising from a prerecorded-voice telemarketing campaign conducted by Quick Capital Funding to consumers' cellular telephones using rotating fictitious caller names.

3. Plaintiff has never been a customer of Quick Capital Funding, has never had any business relationship with it, and never consented to receive its calls. Plaintiff's cellular telephone number has been registered on the National Do Not Call Registry since March 26, 2026. Nevertheless, on May 6, May 7, and May 8, 2026—each more than thirty-one days after that registration—Defendants delivered prerecorded voice messages to Plaintiff's cellular telephone from three different Kentucky-area-code numbers.

4. The May 2026 calls came after Plaintiff had, on at least four occasions, told the business-funding callers to stop calling him.

5. The TCPA and its implementing regulations prohibit prerecorded-voice telemarketing calls to cellular telephones without prior express written consent; prohibit telephone solicitations to numbers on the National Do Not Call Registry; require every telemarketer to institute and honor internal do-not-call procedures, to identify itself and the company on whose behalf it is calling, and to transmit truthful caller-identification information; and the FTSA independently prohibits recorded-message sales calls to Florida consumers without prior express written consent and calls to consumers who have asked that the calls stop. Defendants violated each of these requirements.

6. Plaintiff brings this action on behalf of himself and classes of similarly situated consumers to recover the statutory damages Congress and the Florida Legislature provided—$500 per violation, which may be trebled to up to $1,500 per violation for Defendants' knowing and willful misconduct—together with injunctive relief. 47 U.S.C. §§ 227(b)(3), 227(c)(5); Fla. Stat. § 501.059(10).

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the proposed classes exceed 100 members, at least one class member is a citizen of a state different from Defendant—Plaintiff is a citizen of Florida, while Quick Capital Funding is a citizen of California—and, on information and belief, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9. This Court has supplemental jurisdiction over the Florida state-law claim under 28 U.S.C. § 1367(a) because that claim arises from the same nucleus of operative fact—Defendants' prerecorded-voice telemarketing campaign—as the federal claims.

10. This Court has general personal jurisdiction over Quick Capital Funding because it is organized under the laws of California and maintains its headquarters and principal place of business in this District, in Orange County, California, where it is essentially at home.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Quick Capital Funding resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including that, on information and belief, the telemarketing campaign at issue was conceived, directed, and financed from Quick Capital Funding's Orange County offices. Assignment to the Southern Division is appropriate because Quick Capital Funding resides in Orange County.

## PARTIES

12. Plaintiff Dhamir Hasan is a natural person who is domiciled in, and a citizen of, the State of Florida, residing in West Palm Beach, Palm Beach County, Florida. At all relevant times, Plaintiff was the subscriber, owner, and sole customary user of the cellular telephone number ending in 6105 (the "Number") and was financially responsible for the Number.

13. Plaintiff uses the Number as a personal, residential telephone line. The Number is assigned to a cellular telephone exchange service, is not associated with any business, is not held out to the public for business purposes, and is used by Plaintiff for personal, family, and household purposes, including in and around his home. Plaintiff is accordingly a "residential telephone subscriber" within the meaning of the TCPA and its implementing regulations. The Federal Communications Commission ("FCC") has stated that it "will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers,'" *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14039 ¶ 36 (2003), and the Ninth Circuit has held that registered cell phones are "presumptively

'residential' within the meaning of § 227(c)," *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).

14. Plaintiff registered the Number on the National Do Not Call Registry on March 26, 2026. The Number has remained continuously registered on the Registry since that date, and was registered more than thirty-one days before each of the May 6, 7, and 8, 2026 calls alleged herein.

15. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Defendant Quick Capital Funding LLC is a California limited liability company with its principal place of business at 2525 Main Street, Suite 530, Irvine, California 92614. Its registered agent for service of process is Incorp Services, Inc. According to its Statement of Information filed with the California Secretary of State on July 26, 2024, its only listed manager or member is Waheed Noory and its type of business is "SM Business Lending." Upon information and belief, Quick Capital Funding markets business loans and business lines of credit to consumers and small businesses throughout the United States, including in Florida.

17. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each fictitiously named defendant—including any lead generator, call center, telemarketing vendor, dialing platform, or affiliated entity that transmitted, or caused the transmission of, the calls and voicemails at issue at Quick Capital Funding's direction or on its behalf—is responsible in some manner for the conduct alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

18. At all relevant times, each Defendant acted as the agent, servant, employee, or joint venturer of each other Defendant, acted within the course and scope of that relationship, and ratified the conduct of each other Defendant. Each Defendant

is directly liable for the calls it physically placed or transmitted and vicariously liable, under federal common-law agency principles, for calls placed or transmitted on its behalf by third parties. As the FCC has ruled, a seller "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC*, Declaratory Ruling, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013) (FCC 13-54).

## THE TELEPHONE CONSUMER PROTECTION ACT

### A. The TCPA's Restrictions on Prerecorded Calls to Cellular Telephones

19. In 1991, Congress enacted the TCPA to protect consumers from the nuisance and privacy invasion caused by unwanted telemarketing. Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy," that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," and that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Pub. L. No. 102-243, § 2(5), (6), (10), 105 Stat. 2394, 2394 (1991).

20. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

21. Under the FCC's implementing regulations, a call that includes or introduces an advertisement or constitutes telemarketing, made to a cellular telephone number using an artificial or prerecorded voice, is prohibited absent the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

22. Section 227(b)(3) creates a private right of action for violations of Section 227(b) and the regulations prescribed thereunder and authorizes an action to enjoin such violations, to recover the greater of actual monetary loss or $500 in statutory damages for each violation, or both. Where the defendant's violations are willful or knowing, the court may, in its discretion, increase the award up to three times that amount—up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

**B. The TCPA's Do-Not-Call and Caller-Identification Protections**

23. Section 227(c) of the TCPA directed the FCC to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24. Among the regulations promulgated under Section 227(c) is 47 C.F.R. § 64.1200(c)(2), which prohibits initiating any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Such do-not-call registrations "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

25. Also promulgated under Section 227(c) is 47 C.F.R. § 64.1200(d), which provides that "[n]o person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and which prescribes minimum standards for those procedures.

26. The minimum standards prescribed by 47 C.F.R. § 64.1200(d) include: (a) "a written policy, available upon demand, for maintaining a do-not-call list," *id.* § 64.1200(d)(1); (b) training of personnel engaged in telemarketing "in the existence and use of the do-not-call list," *id.* § 64.1200(d)(2); (c) recording and honoring a

subscriber's do-not-call request "within a reasonable time from the date such request is made," a period that "may not exceed ten (10) business days from the receipt of such request," with the person or entity on whose behalf the call is made liable for any failure to honor the request, *id.* § 64.1200(d)(3); (d) providing the called party with "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," *id.* § 64.1200(d)(4); and (e) maintaining a record of each do-not-call request and honoring it for five years, *id.* § 64.1200(d)(6).

27. A called party may revoke any prior express consent "by using any reasonable method to clearly express a desire not to receive further calls," and "[a]ll requests to revoke prior express consent or prior express written consent made in any reasonable manner must be honored within a reasonable time not to exceed ten business days from receipt of such request." 47 C.F.R. § 64.1200(a)(10). The ten-business-day figure is an outer limit, not a grace period; no conceivable grace period excuses the conduct alleged herein.

28. The do-not-call protections of 47 C.F.R. § 64.1200(c) and (d) apply to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

29. The FCC has also required, under its Section 227(c) authority, that "[a]ny person or entity that engages in telemarketing . . . must transmit caller identification information," which must include either the calling party number or automatic number identification and, when available, "the name of the telemarketer," or the name of the seller on whose behalf the call is placed together with a customer-service number that permits a do-not-call request to be made during regular business hours; and it has prohibited telemarketers from blocking the transmission of caller identification information. 47 C.F.R. § 64.1601(e). Because § 64.1601(e) was promulgated to implement Section 227(c), its violation is actionable under Section 227(c)(5). *See Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, 2026 U.S. Dist. LEXIS

36216, at *13 (D. Or. Feb. 23, 2026); *Barton v. Am. Fam. Life Assur. Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 U.S. Dist. LEXIS 11952, at *20 (W.D. Wash. Jan. 22, 2026); *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 575–82 (E.D. Pa. 2025); *Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373, 376–80 (E.D. Mich. 2025).

30. Section 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," and authorizes recovery of up to $500 in statutory damages for each violation, which may be trebled to up to $1,500 per violation where the defendant acted willfully or knowingly. 47 U.S.C. § 227(c)(5).

31. Unwanted telemarketing calls constitute a concrete injury in fact. "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

## THE FLORIDA TELEPHONE SOLICITATION ACT

32. The Florida Telephone Solicitation Act, Fla. Stat. § 501.059, regulates "telephonic sales calls" to Florida consumers, a term that includes "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services" or "soliciting an extension of credit for consumer goods or services." Fla. Stat. § 501.059(1)(j).

33. The FTSA provides that "[a] person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

34. The FTSA further provides that a telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a

consumer who has previously communicated that he or she does not wish to receive such calls made by or on behalf of the seller. Fla. Stat. § 501.059(5)(a).

35. A called party aggrieved by a violation of the FTSA may bring an action to enjoin the violation and to recover actual damages or $500, whichever is greater, and "[i]f the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)." Fla. Stat. § 501.059(10)(a)–(b).

## FACTUAL ALLEGATIONS

### A. Defendants' Prerecorded Business-Funding Campaign

36. Upon information and belief, Quick Capital Funding markets business loans and business lines of credit to consumers and small businesses throughout the United States from its offices in Irvine, California. On information and belief, a core component of its marketing strategy is high-volume, outbound telephone solicitation using artificial or prerecorded voice messages, transmitted by Quick Capital Funding and by lead generators, call centers, and dialing vendors acting on its behalf (the Doe Defendants).

37. On information and belief, the campaign operates in a consistent pattern: prerecorded voice messages are delivered to consumers' cellular telephones from a rotating pool of "spoofed" telephone numbers that change from call to call and that do not identify the caller. Each message is delivered under a fictitious caller name and a generic team name such as "the business credit funding team," without ever naming Quick Capital Funding; each message directs the consumer to call back a toll-free number; and consumers who call back are screened by a representative who declines to identify the company before being transferred to Quick Capital Funding personnel.

38. Plaintiff has never been a customer of Quick Capital Funding, has never had any business relationship with Quick Capital Funding, and has never given Quick

Capital Funding or anyone acting on its behalf prior express invitation or permission—let alone prior express written consent—to call him.

**B. The Calls to Plaintiff**

39. Beginning in or about October 2025 and continuing through at least May 2026, Plaintiff received hundreds of unsolicited calls to the Number from telephone numbers he did not recognize, many of them prerecorded voicemail messages pitching business loans and business lines of credit. The calls described below are the calls Plaintiff has traced to Quick Capital Funding. Plaintiff is informed and believes, and on that basis alleges, that Defendants' own transmission records and dialing-platform logs, and those of their vendors, will show additional prerecorded telemarketing calls made by or on behalf of Quick Capital Funding to the Number, both before and after Plaintiff's do-not-call requests. Those records are in Defendants' exclusive possession, and Plaintiff will seek leave to amend to allege those calls once they are identified in discovery.

40. On May 6, 2026, at approximately 5:47 p.m. Eastern Time, Defendants placed, or caused to be placed on their behalf, a call to the Number from (502) 358-3152 that delivered a prerecorded voice message to Plaintiff's voicemail box from "Kenneth Andrew with the business credit funding team," pitching a "term loan program" and a "business credit line program" and directing Plaintiff to call back (877) 961-0069.

41. On May 7, 2026, at approximately 5:50 p.m. Eastern Time, Defendants placed, or caused to be placed on their behalf, a second call to the Number, from (502) 661-0240, that delivered the same prerecorded "Kenneth Andrew with the business credit funding team" message to Plaintiff's voicemail box.

42. On May 8, 2026, at approximately 5:47 p.m. Eastern Time, Defendants placed, or caused to be placed on their behalf, a third call to the Number, from (502)

492-6023, that again delivered the same prerecorded “Kenneth Andrew with the business credit funding team” message to Plaintiff’s voicemail box.

43. True and correct copies of Plaintiff’s records of these three voicemail messages are attached hereto as Exhibit A.

44. Each of the three messages was plainly prerecorded: the identical scripted message, in the same voice, tone, and cadence, with the same verbal tics, was delivered on three consecutive days from three different telephone numbers; the voice and intonation were generic and unnatural; and the message referred to “your business file” and “your industry competitors” even though Plaintiff has no business. Each message was a “call” within the meaning of the TCPA and constituted “telemarketing” and a “telephone solicitation” within the meaning of the TCPA and its implementing regulations, and a “telephonic sales call” within the meaning of the FTSA, because each encouraged Plaintiff to obtain a business loan or line of credit from Defendants.

45. None of the three messages identified the name of the person or entity on whose behalf the call was being made. Each identified the caller only as “Kenneth Andrew with the business credit funding team.” “The business credit funding team” is not the name of any person or entity; it is a generic label used to conceal the identity of the seller.

46. None of the three calls transmitted caller identification information identifying Quick Capital Funding or any telemarketer. Each displayed a different Kentucky-area-code number that, on information and belief, was not assigned to Defendants, was not in service for inbound calls, and did not permit a do-not-call request to be made, and each was selected to conceal the identity of the caller and to defeat call-blocking.

### C. The May 8, 2026 Callback Reveals Quick Capital Funding

47. On May 8, 2026, at approximately 6:45 p.m. Eastern Time, in order to identify the company behind the calls, Plaintiff called the callback number given in the prerecorded messages, (877) 961-0069.

48. During this call, Plaintiff learned the true identity of the caller: Quick Capital Funding. During the call, Quick Capital Funding sent Plaintiff a confirmation text message containing its own name and another callback number.

49. During the same call, at 6:54 p.m. Eastern Time, Alex Pham, "Senior Funding Advisor, Quick Capital Funding," alex@quick-capitalfunding.com, telephone (949) 356-7743, sent an email bearing the Quick Capital Funding logo and the subject line "Quick Capital Funding- REVENUE VERIFICATION," requesting "PDF copies of your business bank statements for the last 4 months" "[t]o begin your cash flow analysis."

50. The "cash flow analysis" and bank-statement request in Quick Capital Funding's email are the very "comprehensive cash flow analysis" and "couple documents" described in the prerecorded messages. The prerecorded calls of May 6, 7, and 8, 2026 were therefore made by or on behalf of Quick Capital Funding, for the purpose of generating business-funding customers for Quick Capital Funding, and Quick Capital Funding accepted the benefit of, and thereby ratified, those calls.

### D. Plaintiff's Do-Not-Call Requests

51. On at least four occasions between approximately December 2025 and April 2026, Plaintiff reached a live representative on one of the business-funding calls to the Number and told the representative, unambiguously, to stop calling him. Plaintiff understood each of those representatives to be calling for Quick Capital Funding, and Plaintiff is informed and believes that each was calling on behalf of Quick Capital Funding or the Doe Defendants; the identities of the operators of the campaign's calling and callback numbers, and their relationships to Quick Capital Funding, are peculiarly

within Defendants' knowledge. Each request was a do-not-call request and a revocation of any conceivable consent, made by a reasonable means, which Defendants were required to record and honor. 47 C.F.R. §§ 64.1200(a)(10), 64.1200(d)(3).

52. Defendants did not stop. The May 6, 7, and 8, 2026 prerecorded calls that Plaintiff traced to Quick Capital Funding were placed after each of Plaintiff's requests, and more than ten business days after the last of them. On information and belief, further calls by or on behalf of Quick Capital Funding followed, as Defendants' records will show.

53. On May 9, 2026, Plaintiff sent Quick Capital Funding a written demand, by certified mail to its Irvine office and its registered agent and by email to info@quick-capitalfunding.com and alex@quick-capitalfunding.com, revoking any and all consent Quick Capital Funding might claim and demanding that it and anyone acting on its behalf cease all calls and text messages to the Number.

54. Far more than ten business days elapsed between Plaintiff's first do-not-call request and the May 6, 7, and 8, 2026 calls. No conceivable grace period excuses Defendants' conduct.

55. On information and belief, Defendants either (a) have not instituted the written do-not-call policies and procedures required by 47 C.F.R. § 64.1200(d)(1); (b) have failed to train their personnel and their agents' personnel in the existence and use of an internal do-not-call list as required by 47 C.F.R. § 64.1200(d)(2); (c) have failed to record and honor do-not-call requests as required by 47 C.F.R. § 64.1200(d)(3) and (d)(6); and (d) have failed to provide called parties with the name of the entity on whose behalf their calls are made, as required by 47 C.F.R. § 64.1200(d)(4). Defendants' use of rotating fictitious names and generic "team" labels, their transmission of spoofed telephone numbers, and their continued prerecorded calls after multiple unambiguous do-not-call requests are each powerful evidence of these failures.

56. Because Defendants had not instituted the procedures that 47 C.F.R. § 64.1200(d) makes a precondition to initiating any call for telemarketing purposes, each telemarketing call Defendants made to Plaintiff was initiated in violation of the regulation—and, at an absolute minimum, each of the May 6, 7, and 8, 2026 calls violated the regulation.

**E. Harm, Willfulness, and Class-Wide Conduct**

57. Plaintiff received Defendants' calls in Florida, on his personal cellular telephone, while located in Florida.

58. Plaintiff was harmed by Defendants' calls. The calls and voicemails invaded his privacy, intruded upon his seclusion, and annoyed and harassed him; they occupied his telephone line; and they wasted his time, including the time spent reviewing and deleting the voicemails, blocking the rotating numbers from which the calls arrived, and attempting to make the calls stop. Because the business-funding calls arrived from ever-changing numbers that could not be blocked, Plaintiff was forced to stop answering calls from unknown numbers altogether and, as a result, missed legitimate calls, including calls from his educational institution.

59. Defendants' violations were knowing and willful. Defendants placed prerecorded calls to a cellular telephone number they had no consent to call and that had been on the National Do Not Call Registry for more than thirty-one days; they continued after Plaintiff's repeated do-not-call requests; they deliberately concealed the identity of the seller through fictitious names, generic "team" labels, spoofed caller identification, and a callback screening process that refuses to name the company; and Quick Capital Funding has long been on notice that this conduct violates the law. Quick Capital Funding has been sued repeatedly for TCPA violations, including in *Abante Rooter & Plumbing, Inc. v. Quick Capital Funding LLC*, No. 3:18-cv-03126 (N.D. Cal. filed May 25, 2018); *Hardin v. Quick Capital Funding, LLC*, No. 2:18-cv-10687 (C.D. Cal. filed Dec. 27, 2018); *Schopp v. Quick Capital Funding, LLC*, No. 4:20-cv-00868

(E.D. Tex. filed Nov. 6, 2020); and *Wilsman v. Quick Capital Funding LLC*, No. 6:25-cv-01906 (M.D. Fla. filed Oct. 1, 2025). Despite this notice, its unlawful conduct has continued, as Plaintiff's experience demonstrates.

60. Plaintiff's experience is not unique. On information and belief, the prerecorded campaign described above is directed at thousands of consumers nationwide, and Defendants have placed prerecorded telemarketing calls to hundreds or thousands of consumers whose numbers were registered on the National Do Not Call Registry, who had asked Defendants to stop, and whose caller identification displayed spoofed numbers that did not identify Defendants.

61. On information and belief, Defendants maintain, or have access to, transmission records and dialing-platform logs reflecting the date, time, content, originating number, target number, and disposition of each outbound prerecorded call, the identity of each lead vendor and call center, and inbound do-not-call requests, such that class members are readily identifiable from Defendants' own records and those of their vendors.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as a member and representative of the following classes and subclass (the "Robocall Class," the "Do-Not-Call Registry Class," the "Internal Do-Not-Call Class," the "Caller-Identification Class," and the "Florida Subclass," and together, the "Classes"):

> **<u>Robocall Class</u>**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received one or more telephone calls, made by or on behalf of Defendants, on their cellular telephone number, using an artificial or prerecorded voice, including prerecorded voicemail messages.

> **<u>Do-Not-Call Registry Class</u>**: All persons in the United States who, from four years prior to the filing of this action through the date of class

certification, received more than one telephone solicitation within any 12-month period, made by or on behalf of Defendants, to a telephone number that had been registered on the National Do Not Call Registry for at least thirty-one days.

**Internal Do-Not-Call Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received more than one telemarketing call within any 12-month period, made by or on behalf of Defendants, after the person had communicated to Defendants, or to anyone calling on Defendants' behalf, a request that the calls stop.

**Caller-Identification Class**: All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received more than one telemarketing call within any 12-month period, made by or on behalf of Defendants, that transmitted caller identification information that did not include the name of the telemarketer or of Defendants, or that displayed a telephone number not assigned to the caller.

**Florida Subclass**: All members of the Classes who received one or more of the calls described above on a telephone number with a Florida area code or while located in Florida.

63. Excluded from the Classes are Defendants; any entity in which any Defendant has a controlling interest; Defendants' officers, directors, legal representatives, successors, and assigns; any judge assigned to this case and members of the judge's immediate family and staff; and Plaintiff's counsel. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

64. **Numerosity**. The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, Defendants placed prerecorded telemarketing calls en masse to thousands of consumers, including hundreds or thousands whose telephone numbers were registered on the National Do Not Call Registry, hundreds or thousands who had submitted do-not-call requests, and hundreds or thousands of Florida recipients. The precise number of members of each of the Classes is ascertainable from Defendants' and their vendors' records.

65. **Ascertainability**. The Classes are defined by objective criteria, and their members can be identified from Defendants' and their vendors' call records, lead files, dialing-platform records, customer-relationship-management data, and carrier records, together with the National Do Not Call Registry.

66. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including: (a) whether Defendants made, or caused to be made, calls to cellular telephone numbers using an artificial or prerecorded voice; (b) whether Defendants made the calls without prior express consent, including prior express written consent; (c) whether the calls were telephone solicitations and/or telemarketing; (d) whether Defendants made more than one telephone solicitation within any 12-month period to telephone numbers registered on the National Do Not Call Registry for at least thirty-one days; (e) whether Defendants instituted the procedures required by 47 C.F.R. § 64.1200(d), including a written policy, personnel training, the recording of do-not-call requests, and identification of the seller; (f) whether Defendants honored do-not-call requests within the time required by law; (g) whether Defendants transmitted the caller identification information required by 47 C.F.R. § 64.1601(e); (h) whether Defendants are directly or vicariously liable for the calls; (i) whether Defendants' violations were willful or knowing; (j) whether Defendants made recorded-message telephonic sales calls to Florida consumers without prior express written consent, or after those consumers asked that the calls stop, in violation of Fla. Stat. § 501.059; and (k) the appropriate measure of statutory damages and the scope of injunctive relief.

67. **Typicality**. Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all members of the Robocall Class received prerecorded calls placed by or on behalf of Defendants to their cellular telephones; Plaintiff, whose Number has been registered on the National Do Not Call Registry since March 26, 2026, and all

members of the Do-Not-Call Registry Class received more than one telephone solicitation in a 12-month period while their numbers were so registered; Plaintiff and all members of the Internal Do-Not-Call Class received such calls after asking Defendants to stop; Plaintiff and all members of the Caller-Identification Class received calls whose caller identification concealed Defendants' identity; and Plaintiff, a Florida resident, and all Florida Subclass members received Defendants' recorded-message sales calls in Florida. All assert the same claims under the same statutes and regulations arising from the same course of conduct.

68. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with, and not antagonistic to, those of the Classes, and Plaintiff has retained counsel experienced in consumer class actions and TCPA litigation. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

69. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to each member of the Classes are modest relative to the burden and expense of individual litigation, class-wide issues can be resolved through common proof drawn from Defendants' own records, and class treatment will conserve judicial resources, promote consistency and efficiency of adjudication, provide a forum for small claimants, deter illegal activity, and avoid inconsistent adjudications. No unusual manageability difficulties are presented.

70. Defendants have acted or refused to act on grounds generally applicable to the Classes, making final injunctive relief and corresponding declaratory relief appropriate respecting the Classes as a whole under Rule 23(b)(2). Moreover, on information and belief, the prerecorded telemarketing calls made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf are substantially likely to continue in the future if an injunction is not entered.

71. **Notice**. Plaintiff contemplates that notice to the members of the Classes will be provided, following certification, by the best notice practicable under the circumstances pursuant to Rule 23(c)(2), including direct notice by mail, email, or text message to the telephone numbers and contact information reflected in Defendants' and their vendors' records, supplemented by publication and a case website as the Court may direct.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b), and 47 C.F.R. § 64.1200(a)**
**(On Behalf of Plaintiff and the Robocall Class)**

72. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

73. Defendants made, or caused to be made on their behalf, telephone calls—including calls delivering prerecorded voicemail messages—using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and the other members of the Robocall Class.

74. The calls were not made for emergency purposes and were made without the prior express consent—much less the prior express written consent—of Plaintiff or the other members of the Robocall Class.

75. Defendants thereby violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) each time they made, or caused to be made, such a call, including on May 6, May 7, and May 8, 2026.

76. As a result of Defendants' violations, Plaintiff and each member of the Robocall Class are entitled to an award of the greater of their actual monetary loss or $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). Because Defendants' violations were knowing and/or willful, Plaintiff and each member of the Robocall Class are further entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

77. Plaintiff and the Robocall Class are also entitled to, and seek, injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls using an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the Do-Not-Call Registry Class)**

78. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

79. Plaintiff and the members of the Do-Not-Call Registry Class are residential telephone subscribers whose telephone numbers were registered on the National Do Not Call Registry more than thirty-one days before Defendants' telephone solicitations. Plaintiff's Number has been continuously registered on the Registry since March 26, 2026. Registration on the Registry evidences a subscriber's objection to receiving telephone solicitations.

80. Defendants initiated, or caused to be initiated on their behalf, more than one telephone solicitation within a 12-month period to Plaintiff and to each member of the Do-Not-Call Registry Class, including the solicitations to Plaintiff on May 6, May 7, and May 8, 2026.

81. Defendants thereby violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) each time they made, or caused to be made, such a telephone solicitation.

82. As a result of Defendants' violations, Plaintiff and each member of the Do-Not-Call Registry Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B). Because Defendants' violations were knowing and/or willful—Defendants placed repeated telephone solicitations to a number registered on the Registry, continued after

Plaintiff's express do-not-call requests, and continued after being sued repeatedly for the same conduct—Plaintiff and each member of the Do-Not-Call Registry Class are further entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

83. Plaintiff and the Do-Not-Call Registry Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

**THIRD CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. §§ 64.1200(d) and 64.1601(e)**
**(On Behalf of Plaintiff, the Internal Do-Not-Call Class, and the Caller-Identification Class)**

84. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

85. Defendants initiated, or caused to be initiated on their behalf, more than one telephone call for telemarketing purposes within a 12-month period to Plaintiff and to each member of the Internal Do-Not-Call Class after Plaintiff and each such member had communicated a request that the calls stop.

86. In so doing, Defendants violated the regulations prescribed under 47 U.S.C. § 227(c), including 47 C.F.R. § 64.1200(d), by initiating telemarketing calls to residential telephone subscribers, including wireless subscribers per 47 C.F.R. § 64.1200(e), without having instituted the required minimum procedures—including a written do-not-call policy, personnel training, and the recording and timely honoring of do-not-call requests—by failing to record and honor do-not-call requests within a reasonable time not to exceed ten business days, and by failing to provide the called party with the name of the person or entity on whose behalf each call was made. 47 C.F.R. § 64.1200(a)(10), (d)(1)–(4), (d)(6).

87. Defendants further violated 47 C.F.R. § 64.1601(e), a regulation prescribed under 47 U.S.C. § 227(c), by initiating more than one telemarketing call

within a 12-month period to Plaintiff and to each member of the Caller-Identification Class without transmitting caller identification information that included the name of the telemarketer or of Defendants, and by transmitting spoofed telephone numbers that were not assigned to the caller and did not permit a do-not-call request to be made.

88. As a result of Defendants' violations, Plaintiff and each member of the Internal Do-Not-Call Class and the Caller-Identification Class are entitled to an award of up to $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B). Because Defendants' violations were knowing and/or willful—Defendants received Plaintiff's and the class members' express do-not-call requests and nevertheless continued to place prerecorded telemarketing calls to them, and deliberately concealed their identity through fictitious names and spoofed caller identification—Plaintiff and each member of the Internal Do-Not-Call Class and the Caller-Identification Class are further entitled to seek, and request that the Court award, treble damages of up to $1,500 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

89. Plaintiff, the Internal Do-Not-Call Class, and the Caller-Identification Class are also entitled to, and seek, injunctive relief prohibiting Defendants' continuing violations, pursuant to 47 U.S.C. § 227(c)(5)(A).

## FOURTH CAUSE OF ACTION
## Violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
## (On Behalf of Plaintiff and the Florida Subclass)

90. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

91. Plaintiff and the members of the Florida Subclass are "called parties" and "consumers" within the meaning of Fla. Stat. § 501.059, and Defendants are "telephone solicitors" and "persons" within the meaning of that section.

92. Each of Defendants' prerecorded calls to Plaintiff and the members of the Florida Subclass was an unsolicited "telephonic sales call" within the meaning of Fla. Stat. § 501.059(1)(j) and (1)(k), because each was made for the purpose of soliciting a sale of consumer goods or services or an extension of credit for consumer goods or services, was not made in response to any express request, and was not made to a person with whom Defendants had a prior or existing business relationship.

93. Defendants directed their calls to Plaintiff as an individual consumer, at his personal cellular telephone. Plaintiff has no business, has never applied for or inquired about business funding, and does not hold the Number out for any business purpose. Whatever label Defendants' prerecorded messages attached to the funding they offered, Defendants offered that funding to Plaintiff personally, and any credit they extended would have been extended to Plaintiff as an individual. Defendants' calls were therefore made to a "consumer" for the purpose of soliciting a sale of consumer goods or services or an extension of credit for consumer goods or services, and for the purpose of obtaining information—including Plaintiff's bank statements—that would or might be used for the direct solicitation of such a sale or extension of credit, within the meaning of Fla. Stat. § 501.059(1)(b), (1)(c), and (1)(j).

94. Defendants made, or knowingly allowed to be made, each such call using a recorded message played when the connection was completed, and, on information and belief, using an automated system for the selection and dialing of telephone numbers, without the prior express written consent of Plaintiff or the members of the Florida Subclass, in violation of Fla. Stat. § 501.059(8)(a).

95. Defendants further initiated outbound telephone calls and voicemail transmissions to Plaintiff and to members of the Florida Subclass after they had communicated that they did not wish to receive such calls, in violation of Fla. Stat. § 501.059(5)(a).

96. As a result of Defendants' violations, Plaintiff and each member of the Florida Subclass are entitled to an award of their actual damages or $500, whichever is greater, for each violation, pursuant to Fla. Stat. § 501.059(10)(a). Because Defendants' violations were willful and knowing, Plaintiff and each member of the Florida Subclass are further entitled to seek, and request that the Court award, up to three times that amount for each violation, pursuant to Fla. Stat. § 501.059(10)(b).

97. Plaintiff and the Florida Subclass are also entitled to, and seek, injunctive relief pursuant to Fla. Stat. § 501.059(10)(a).

## DOCUMENT PRESERVATION DEMAND

98. Plaintiff hereby demands that Defendants, and each of them, preserve all documents, data, and electronically stored information relating to the claims and defenses in this action, including without limitation: all outbound call, text, and voicemail transmission records, dialing-platform and ringless-voicemail platform logs, and call recordings for the four years preceding the filing of this Complaint; all prerecorded message scripts and audio files; all lead files, lead-vendor, call-center, and telemarketing-vendor contracts, invoices, and communications; all records of caller identification numbers used or purchased; all internal do-not-call lists, do-not-call policies, and records of do-not-call requests; all consent records; and all records relating to Plaintiff, the Number, and the telephone numbers (877) 961-0069, (855) 357-2016, and (949) 356-7743. Defendants are on notice that the destruction, alteration, or loss of any such information may give rise to sanctions for spoliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

a. An order certifying the Robocall Class, the Do-Not-Call Registry Class, the Internal Do-Not-Call Class, the Caller-Identification Class, and the Florida

Subclass as defined above, appointing Plaintiff as representative of the Classes, and appointing the undersigned as Class Counsel;

b. A declaration that Defendants' conduct violated 47 U.S.C. § 227(b); 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c), 64.1200(d), and 64.1601(e); and Fla. Stat. § 501.059;

c. An award to Plaintiff and each member of the Robocall Class of the greater of actual monetary loss or $500 in statutory damages for each violation of 47 U.S.C. § 227(b), and treble statutory damages of up to $1,500 for each knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3);

d. An award to Plaintiff and each member of the Do-Not-Call Registry Class, the Internal Do-Not-Call Class, and the Caller-Identification Class of up to $500 in statutory damages for each violation of 47 U.S.C. § 227(c) and the regulations prescribed thereunder, and treble statutory damages of up to $1,500 for each knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5);

e. An award to Plaintiff and each member of the Florida Subclass of actual damages or $500, whichever is greater, for each violation of Fla. Stat. § 501.059, and up to three times that amount for each willful or knowing violation, pursuant to Fla. Stat. § 501.059(10);

f. An injunction prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls using an artificial or prerecorded voice, except for emergency purposes, to any cellular telephone number, from initiating telephone solicitations to any telephone number registered on the National Do Not Call Registry, and requiring Defendants to cease all telemarketing communications made in violation of 47 U.S.C. § 227(c) and 47 C.F.R. §§ 64.1200(c), 64.1200(d), and 64.1601(e) and Fla. Stat. § 501.059, and to institute the policies, training, recordkeeping, and caller-identification practices required by law,

pursuant to 47 U.S.C. §§ 227(b)(3)(A) and 227(c)(5)(A) and Fla. Stat. § 501.059(10)(a);

g. An award of reasonable attorneys' fees and costs to the extent permitted by law;

h. Pre-judgment and post-judgment interest to the extent permitted by law; and

i. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: September 24, 2026

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/ Todd M. Friedman
Todd M. Friedman

**LAVIAN, P.C.**

By: /s/ Ilan Lavian
Ilan Lavian

*Attorneys for Plaintiff and the Proposed Classes*

**ATTESTATION:** Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

## EXHIBIT A

## Records of the May 6, 7, and 8, 2026 Prerecorded Voicemail Messages

**Exhibit A-1** Voicemail record — May 6, 2026, approximately 5:47 p.m. ET, from (502) 358-3152 (“Kenneth Andrew with the business credit funding team”).

**Exhibit A-2** Voicemail record — May 7, 2026, approximately 5:50 p.m. ET, from (502) 661-0240 (same message).

**Exhibit A-3** Voicemail record — May 8, 2026, approximately 5:47 p.m. ET, from (502) 492-6023 (same message; full transcript as displayed by Plaintiff’s telephone).

**Exhibit A-4** Voicemail record — May 8, 2026, from (502) 492-6023 (same voicemail; header view showing date, voicemail timestamp of 5:49 p.m. ET, and duration).

**EXHIBIT A-1**


15:53
Unknown - May 6, 2026 at 17:48
00:00
-01:03
+1 (502) 358-3152
Add Contact
Report Spam
Transcript
Andrew with the business credit funding team. Hi, this is Kenneth Andrew with the business credit funding team. I'm calling you today because I was finalizing a business credit line for one of your industry competitors. And after taking a look at your business file, it looks like you also qualify for one of our unsecured financing programs. Either our term loan program, with customizable, term lengths uh from 36 to 72 months. Or our business credit line program with uh funding up to $280,000. We only need a couple documents to complete a comprehensive cash flow analysis, um, and finalize the offer for you with funds being in your business, checking account as quickly as tomorrow. Give me a quick call back at this number and I'd be happy to discuss this further with you. Give me a quick call back at 877-9610.0069. againain 877-961-0069 and I'd be happy to discuss this further with you
Favorites
Recents
Contacts
Keypad
125
Voicemail

# EXHIBIT A-2


12:55
+1 (502) 661-0240
Unknown - May 7, 2026 at 17:51
00:00
-01:03
Add Contact
Report Spam
Transcript
With Andrew with the business credit funding team. Hi, this is Kenneth Andrew with the business credit funding team. I'm calling you today because I was finalizing a business credit line for one of your industry competitors. And after taking a look at your business file, it looks like you also qualify for one of our unsecured financing programs, either our term loan program, with customizable, term lengths from 36 to 72 months. Or our business credit line program, with uh funding up to $280,000. We only need a couple documents to complete a comprehensive cash flow analysis um and finalize the offer for you with funds being in your business, checking account as quickly as tomorrow. Give me a quick call back at this
happy to discuss this further with
Favorites
3
Recents
Contacts
Keypad
106
Voicemail

**EXHIBIT A-3**


15:52
Unknown - May 8, 2026 at 17:49
00:00
-01:03
+1 (502) 492-6023
Add Contact
Report Spam
Transcript
Kenneth Andrew with the business credit funding team. Hi, this is Kenneth Andrew with the business credit funding team. I'm calling you today because I was finalizing a business credit line for one of your industry competitors. And after taking a look at your business file, it looks like you also qualify for one of our unsecured financing programs, either our term loan program, with customizable, term lengths, uh, from 36 to 72 months, or our business credit line program, with uh, funding up to $280,000. We only need a couple documents to complete a comprehensive cash flow analysis um and finalize the offer for you with funds being in your business, checking account as quickly as tomorrow. Give me a quick call back at this number, and I'd be happy to discuss this further with you. Give me a quick call back at 877-961-0069. Again 877-961-0069 and I'd be happy to discuss this further
Favorites
Recents
Contacts
Keypad
125
Voicemail

# EXHIBIT A-4


12:56
+1 (502) 492-6023
Unknown - May 8, 2026 at 17:49
00:00
-01:03
Add Contact
Report Spam
Transcript
Kenneth Andrew with the business credit funding team. Hi, this is Kenneth Andrew with the business credit funding team. I'm calling you today because I was finalizing a business credit line for one of your industry competitors. And after taking a look at your business file, it looks like you also qualify for one of our unsecured financing programs, either our term loan program, with customizable, term lengths, uh, from 36 to 72 months, or our business credit line program, with uh, funding up to $280,000. We only need a couple documents to complete a comprehensive cash flow analysis um and finalize the offer for you with funds being in your business, checking account as quickly as tomorrow. Give me a quick call back at this
happy to discuss this further
3
106
Favorites
Recents
Contacts
Keypad
Voicemail